UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6:16-cr-00180-RBD-GJK |
| ) | |
| JAMES LONG, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

COMES NOW the Defendant, James Long [hereinafter "Long"],[1] by and though his undersigned counsel, and in support of the positions to be taken at sentencing of this matter on January 9, 2017, hereby submits his Sentencing Memorandum in order to give the Court more detail with respect to the statutory framework for this analysis, the nature of the offense at issue, and the nature and character of Mr. Long himself, and respectfully requests that this Court consider the matters addressed herein as it exercises its most important discretion: the determination of the sentence to be imposed in this case.

---

[1] The defendant is only one of many soon to be indicted. As indicated throughout the pre-sentence investigation report, there are several licensed professionals and many others as or more deeply involved with and arguably more culpable with respect to the illegal activity conducted at the Professional Pain Center. Although Mr. Long is the first to be prosecuted, he is but one piece of a much larger picture and has, throughout the Government's investigation, endeavored to cooperate and assist to the best of his ability.

## MEMORANDUM OF LAW

### I.     Legal Framework

a.     **Procedural History**

*1.     Charges*

The defendant was charged by Information with one (1) count of Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h). A violation of 18 U.S.C. § 1956(h) carries a maximum sentence of twenty (20) years' imprisonment, a fine of not more than $500,000.00 or twice the value of the property involved in the transaction, whichever is greater, a term of supervised release of not more than three (3) years, and a special assessment of $100.00. There is no mandatory or statutory minimum period of imprisonment for this crime. It should be noted that there are no specifically identifiable victims of the crimes listed above.

*2.     Disposition*

Mr. Long and the United States entered into a plea agreement wherein Mr. Long agreed to plead guilty to Count One (1) of the Information operative herein. Mr. Long pled guilty before the United States Magistrate Judge Gregory J. Kelly on October 11, 2016. The following day, on October 12, 2016, United States District Judge Roy B. Dalton, Jr., accepted the plea and adjudicated Mr. Long guilty of the offense. The sentencing in this matter is scheduled for January 9, 2017.

*3.     Defendant's Assistance to the Government*

In taking responsibility for his conduct in a timely manner, the defendant has assisted authorities in the investigation of the offense by providing timely notification of his intent to plead guilty. Pursuant to the written plea agreement, the government will recommend a three

(3) level reduction for acceptance and responsibility.

Furthermore, Mr. Long has endeavored to provide further assistance to the authorities by, inter alia, attending and providing information during a proffer which took place on August 9, 2013, and during a proffer which took place on October 14, 2016. Additionally, further cooperation is expected as the government continues its investigation(s). The defendant has made an effort to and intends to continue his efforts to provide substantial assistance to the government.

**b.     Sentencing Proceedings after *Gall v. United States*

The Supreme Court has clearly held that a sentencing proceeding must begin with the district court correctly calculating the applicable Guidelines range. Gall v. United States, 552 U.S. 38, 49 (2007). However, it has been made equally clear by the Supreme Court that the Guidelines are merely the starting point and the initial benchmark. Id. Thus, a judge, after hearing the respective arguments of the parties, "should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." Id. at 49-50 (emphasis added). The judge, in doing so, cannot presume that the outcome dictated by the Guidelines is reasonable. Id. at 50. Indeed, judges may consider arguments that the applicable guidelines fail to properly reflect § 3553(a) consideration, reflect unsound judgment, do not treat defendant characteristics in the proper way, or result in an inappropriate sentence. Rita v. United States, 551 U.S. 338, 351 (2007).

**c.     18 U.S.C. § 3553 and Sentencing Factors**

Title 18, United States Code, Section 3553 contains a substantial number of factors the Court must consider in imposing a sentence. It is axiomatic that the Court must impose a sentence "sufficient, but not greater than necessary" to meet the stated goals of justice,

deterrence, protection of the public, and rehabilitation of the defendant. 18 U.S.C. § 3553(a) & (a)(2)(A)-(D). (emphasis added).

The legislative history of the Sentencing Reform Act also indicates Congress' strong desire for judges to exercise their own discretion in imposing sentence after careful consideration of the factors. The history itself states:

> The sentencing judge has an obligation to consider all the relevant factors in a case and to impose a sentence outside the guidelines in an appropriate case. The purpose of the Sentencing Guidelines is to provide a structure for evaluating the fairness and appropriateness of the sentences for an individual offender, not to eliminate the thoughtful imposition of individualized sentences.

S. REP. NO. 98-225, at 52 (1983).

The factors provided for the court to consider pursuant to 18 U.S.C. § 3553(a) are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed –
    (A) to reflect the seriousness of the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentences and the sentencing range established for –
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines

        (i) issued by the Sentencing Commission . . . .
. . . .
. . . .
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

Further, in assessing any of these factors, the admonition in 18 U.S.C. § 3582 must not be discounted. In addition to the factors from § 3553(a), the Court is required to "recognize[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582. In order to fully assess the totality of the circumstances of the defendant and the offense conduct, 18 U.S.C. §3661 requires that "no limitation shall be placed on the information concerning the background, character and conduct of [the Defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." As a result of the foregoing, a careful review of each of the § 3553(a) factors is warranted.

The following will address each of the § 3553(a) factors ad seratium.

## II. Facts and Application

### a. 18 U.S.C. § 3553(a)(1) – Nature and Circumstances of Offense

As mentioned above, the instant offense involves a conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). The plea agreement and pre-sentence investigation report [hereinafter "PSIR"] sets forth the nature and circumstances of the offense. As can be gleaned from a review of both documents, Mr. Long's involvement was limited to his access to and handling of the proceeds from the Professional Pain Center.[2] Mr. Long does not have medical training, nor did he have any involvement whatsoever with the medical field prior to the Professional Pain Center. Mr. Long was approached about investing in and opening a pain management clinic by Dan Bogan. As Mr. Long had the means to invest in such a venture, he agreed, despite his limited knowledge in the field.

---

[2] Mr. Long was not the sole party who was named in and had access to the account(s), nor was he the only party to make deposits to the account(s).

Given his extremely limited involvement with the day to day running of the Professional Pain Clinic, he was wholly unaware that the clinic was unlawfully prescribing prescriptions. Although Mr. Long was unaware of the unlawful activity, he did receive monies from the clinic and subsequently invested the same in rental properties and other ventures without any inquiry as to the legitimacy of the proceeds. Essentially, Mr. Long failed to observe the age-old idiom that "if it seems too good to be true, it probably is." Nevertheless, Mr. Long acknowledges that he should have remained more involved in order to prevent the unlawful activity and takes full responsibility for his failure to do so.

b. **18 U.S.C. § 3553(a)(1) – History and Characteristics of Defendant**

The PSIR does an excellent job of providing Mr. Long's biographical data. Wholesale repetition of it here would be redundant, save for a few key points: Mr. Long is now forty-four (44) years old and, until the instant offense, has led an exemplary life. He was and remains a dedicated husband[3] and loving father of four (4) outstanding children, two (2) of which are still minors. He built and operated a successful business (J&L Masonry, Inc.) and made sure that he provided for his family. He has had no prior run-ins with the law and, other than for the instant offense, has been a law-abiding citizen. Furthermore, Mr. Long does not have a history of substance abuse, nor does he have a history of mental illness. At bottom, Mr. Long's history and characteristics are not that of a repeat offender or criminal mastermind. He is simply a family man who became involved with the wrong people in his endeavor to provide for his family and give them as a great of a life as he could.

---

[3] Although Mr. Long's first marriage ended in divorce, he has been married to the current Mrs. Long for over five (5) years. Furthermore, Mr. Long was granted sole custody of his two (2) oldest children after the divorce and was their sole means of support, monetarily and otherwise.

    **c.**    **18 U.S.C. § 3553(a)(2) – Sentencing Needs**

        *1.*    *The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment for the offense.*

The instant offense is clearly solemn. However, the narrow scope of the offense reveals this offense to be a less serious offense compared to many that come before the court. See, e.g., 18 U.S.C. §§ 1591, 2332 & 2251A. Punishment of this offense by imprisonment at the sentencing guideline range calculated by the probation office exaggerates the seriousness of the offense, does not promote respect for the law (as it will be seen as a punishment disproportionate to the offense conduct, as well as the result), and would be, as a consequence, unjust. In contract, a punishment the guidelines score calculated by the probation office meets all of these elements by affording the defendant a chance to prove that his cooperation and future behaviors are rewarded with only one thing: the opportunity to conform his conduct to societal and legal norms.

        *2.*    *The need for the sentence to afford adequate deterrence to criminal conduct.*

Clearly, the court must impose a sentence that serves the valid goal of deterrence. In light of the significant personal costs that the defendant's own behaviors have subjected him to and the impact this matter has had on his family and those relationships, a felony conviction (with the attendant loss of civil rights) and a period of incarceration below the guideline score calculated by the probation office or probation will not only serve to deter Mr. Long from future transgressions, but also all those with whom he comes into contact. Such a sentence will still "broadcast the message" that this type of behavior is wholly unacceptable. See Gall, 552 U.S. at 48 (stating that "[o]ffenders on probation are nonetheless subject to several

standard conditions that substantially restrict their liberty"). Deterrence follows as a natural consequence.

      3.     *The need for the sentence to protect the public from further crimes of the defendant.*

The defendant's offense is his first offense and, more importantly, will be his last. The defendant has cooperated in this matter and has expressed not only acceptance of responsibility but also remorse for the conduct which he engaged in. These and other actions taken by Mr. Long strongly indicate that he can be rehabilitated to the point where he does not represent a threat of future offense.

Furthermore, the defendant does not pose a high risk of recidivism. Commissioned by the U.S. Sentencing Commission as a component of the fifteen-year report on their Legislative Mandate, the first release, titled, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, (May 2004), studied, among other things, recidivism rates associated with offender and offense characteristics and were able to highlight important relationship. The introductory comments to U.S.S.G. Ch. 4, Pt. A states that "while empirical research has shown that other factors are correlated highly with the likelihood of recidivism, e.g., age and drug abuse, for policy reasons they were not included here at this time." U.S.S.G. Ch. 4, Pt. A. Post Booker, however, courts are now authorized to consider such factors, and thus, said correlations have become highly relevant. One such relationship studied concerned offense seriousness and recidivism. The study found that there was no correlation between recidivism and the guideline's offense level. Regardless of whether the offender has a high or low guidelines offense level, recidivism rates are similar. Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 15 (2004).

The study also concluded that there are several legally permissible offender characteristics that are highly correlated to recidivism rates. One such pertinent characteristic is age. "Recidivism rates decline relatively consistently as age increases. . . . Among all offenders under the age of 21, the recidivism rate is 35.5%, while offenders over age 50 have a recidivism rate of 9.5%." Id. at 12. Additionally, offenders between the ages of 41 to 50 have a recidivism rate of only 12.7%. Id. at Exhibit 9. Mr. Long is currently forty-four (44) years of age, and, as a result of his age, the court should consider that he presents a low risk of recidivism based on the findings of the above-mentioned study.

Another pertinent characteristic is educational attainment. The Sentencing Commission's report indicates that offenders with at least a high school education (19.3%) are much less likely to recidivate than those with less than a high school education (31.4%). Id. at 12. Likewise, the Commission found a relationship between an offender's employment status and the likelihood of recidivism. The study found that, "those with stable employment in the year prior to their instant offense are less likely to recidivate (19.6%) than are those who are unemployed (32.4%)." Id. Mr. Long holds a high school diploma and has successfully ran his own business (J&L Masonry) for over twenty (20) years and, as a consequence, holds a low risk of recidivism.

Further, significant findings of the U.S. Sentencing Commission's report includes a lower recidivism rate for offenders who are married (13.8%) than those who are either divorced (19.5%) or have never been married (32.3%). Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 12 (2004). Mr. Long has been happily married to Mrs. Long for the past five (5) years. Likewise, the U.S. Sentencing Commission's report notes that offenders not using illicit drugs only have 17.4% chance of

recidivism as compared 31% of offenders who do use illicit drugs. Id. at 13. Finally, the report also found that offenders with a criminal history score of 0 had a significantly reduced rate of recidivism. Id. at Exhibit 4. Specifically, only 11.8% of those with a criminal history score of 0 recidivated. Id. In comparison, 22.5% of those with a criminal history score of 1 recidivated. Id. Not surprisingly, the percentage increases as the criminal history points increase. Id.

Taken as a whole, the defendant's age, educational level, employment history, marital status, abstention from drug use, and non-existent criminal history (along with many other factors outlined in this memorandum), show the defendant to have a low overall risk of recidivism.

    4.    *The need for the sentence to provide the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

Mr. Long, if sentenced to a term of imprisonment below the guideline score calculated by the probation office and/or probation, will receive the needed correctional treatment to comport himself with the law. In its mandate to the Sentencing Commission, Congress clearly indicates its preference for a sentence of probation to fulfill the goals of 18 U.S.C. § 3553(a)(2)(D). 28 U.S.C. § 994(k). Congress specifically mandated that "[t]he Commission shall insure that the guidelines reflect the <u>inappropriateness of imposing a sentence to a term of imprisonment</u> for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment." Id. (emphasis added). Congress further delineated this intent as follows:

> [i]f an offense does not warrant imprisonment for some other purpose of sentencing, the committee would expect that such a defendant would be placed on probation with appropriate conditions to provide needed education or vocational training. . . . 28 U.S.C. § 994(k), which precludes the imposition of a term of imprisonment for the sole purpose of rehabilitation, makes clear that

> a defendant should not be sent to prison only because the prison has a program that 'might be good for him.'

S. Rep. 98-225, 71 1984 n. 521 (1983). As such, the Court should carefully weigh this factor and determine whether a below the guideline score and/or probation would be most appropriate.

### d.   18 U.S.C. § 3553(a)(3) – The Types of Sentences Available

There are a variety of sentencing ranges and options available to this Court. As the PSIR explains, the maximum term of imprisonment under the statute at issue here is twenty (20) years. 18 U.S.C. § 1956(h). The Court may also impose a term of supervised release upon the defendant. Statutorily, the Court may impose a term of supervised release of <u>not</u> more than three (3) years. 18 U.S.C. § 3583(b)(2). The guideline range for a term of supervised release is one (1) to three (3) years. U.S.S.G. § 5D1.2(a)(2). Additionally, the Court may impose a fine upon the defendant. 18 U.S.C. § 3571(b). However, as noted in the PSIR, the defendant does not have the ability to a fine given his present financial condition.

### e.   18 U.S.C. § 3553(a)(4) – Sentencing Guidelines Impact

The guidelines sentence called for in the PSIR based upon Mr. Long's offense level is two hundred and forty (240) months of incarceration.

### f.   Need to Avoid Sentencing Disparities

In <u>Gall</u>, the Supreme Court instructed that the "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." <u>Gall</u>, 552 U.S. at 55. However, in the instant matter, the recommended guideline range of twenty (20) years would result in precisely the opposite of that intended by the Sentencing Commission (<u>i.e.</u> unwarranted sentencing discrepancy).

Of particular note, other offenders who have been charged with conspiracy to commit money laundering and involving similar facts as the ones herein, have been sentenced to significantly lower periods of incarceration. See, e.g., United States v. Cynthia Cadet, M.D., case no. 9:1-0-cr-80149-KAM (S.D. Fla. West Palm Beach Div.)(Cadet, who had an offense level of forty (40) per her PSIR, was sentenced to seventy-eight (78) months after a jury trial conviction of conspiracy to commit money laundering with respect to a case involving pill mills in Broward and Palm Beach County); United States v. Joseph Castronuovo, M.D., case no. 9:1-0-cr-80149-KAM (S.D. Fla. West Palm Beach Div.)(Castronuovo, who had a guideline imprisonment range of 292 to 365 months, was sentenced to eighteen (18) months after a jury trial conviction of conspiracy to commit money laundering with respect to a case involving pill mills in Broward and Palm Beach County); United States v. Kim Xuan Feldman, case no. 8:14-cr-00521-JDW-AEP (M.D. Fla. Tampa Div.)(Feldman was sentenced to forty-eight (48) months after a jury trial for conspiracy to commit money laundering, conspiracy to illegally distribute and dispense and cause the distribution and dispensing of Oxycodone, Methadone, Alprazolam and Diazepam, and three (3) counts of illegal money transactions with respect to a pill mill case resulting in no less than three (3) deaths); United States v. Joel A. Shumrak, case no. 6:13-cr-00040-ART-HAI (E.D. KY. Southern Div.)(Shumrak, the owner of a South Florida pill mill which grossed over fifteen million dollars ($15,000,000.00), was sentenced to one hundred and sixty-eight (168) months after pleading guilty to conspiracy to distribute oxycodone and conspiracy to commit money laundering); United States v. Jody L. Robinson, case no. 0:12-cr-00014-DLB-EBA (E.D. KY Norther Div.)(Robinson, the owner of two pain clinics (one in Florida and one in Ohio), was sentenced to forty-eight (48) months followed by three (3) years of supervised release after pleading guilty to conspiracy to commit money

laundering); United States v. Gerard M. DiLeo, case no. 3:10-cr-101-002-MCR (N.D. Fla. Pensacola Div.)(DiLeo, a partial owner of one of the pain clinics involved and a full-time prescribing physician who had an offense level of forty (40) per his PSIR, was sentenced to only twenty-four (24) months imprisonment followed by one (1) year of home confinement after he was found guilty of conspiracy to knowingly and willfully dispense, and causing to be dispenses schedule IV controlled substances and conspiracy to commit money laundering).

g.  **Need to Provide Restitution to Victims of Offense**

Restitution is not applicable in this case.  18 U.S.C. § 3571(b).

### III.  Conclusion

Mr. Long asks this Court to consider all of the factors raised in this Memorandum and to remember that he did not participate in any acts of violence nor were any acts of violence (or even a threat of violence) associated with his offense; there are no identifiable victims as a result of this offense.  Mr. Long is in no way a threat to the community and will never run afoul of the law again.  Mr. Long has demonstrated his genuine remorse and desire to better himself and make amends for his actions.  He wholeheartedly desires to return to being a decent, cooperative, moral, and contributing member of society.  He recognizes and is remorseful for the potential damage to society caused by his actions.  Mr. Long had no prior criminal arrests or convictions prior to this offense and is a very competent, dependable, helpful, sensible, promising person, worthy of a second chance at a life.

Furthermore, the Court may and should consider Mr. Long's family situation and the extreme anguish experienced by him and by each member of his family.  Even the Federal Sentencing Guidelines "do not require a judge to leave compassion and common sense at the door of the courtroom." United States v. Johnson., 964 F.2d 124, 125 (2d Cir. 1992); see,

United States v. Mateo., 299 F.Supp.2d 201 (S.D.N.Y. 2004); United States v. Cob., 249 F.Supp.2d 740 (E.D.Va. 2003); United States v. Rivera., 994 F.2d 942 (1st Cir. 1993). As noted above, Mr. Long is a dedicated husband and loving father to four wonderful children, two of whom are still minors. Mr. Long deeply regrets the effect that his actions have had on his family and desires nothing more than to cooperate and assist the government so that he can one day return to his family.

We live in a society that preaches reform, rehabilitation and, that a man like James Long can change—that humanity will give him another opportunity if he deserves one. It is only right to allow Mr. Long the opportunity to have a future. He is not able to change the past or erase the wrongs, but he can make a difference in his future and the future of his family, and he can give of himself to improve the quality of the lives of the people around him.

Respectfully submitted this 29th day of December, 2016.

                                        s/ A. Brian Phillips
                                        **A. BRIAN PHILLIPS, ESQ.**
                                        Florida Bar No.: 0067113
                                        **A. BRIAN PHILLIPS, P.A.**
                                        912 Highland Avenue
                                        Orlando, Florida 32803
                                        Telephone:   (407) 872-0777
                                        Facsimile:    (407) 872-0704
                                        Counsel for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on December 29, 2016, I filed a copy of the foregoing with the Clerk of the Court via the CM/ECF system. I further certify that all parties to this case are equipped to receive service of documents via that system.

s/ A. Brian Phillips<br>
A. Brian Phillips, Esq.